RjIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO: |
| v. | ) ) | _____ |
| KRAMER CORPORATION OF GA; BAY VALLEY FOODS, LLC; and FFI GROUP, LLC. | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Auto-Owners Insurance Company ("Auto-Owners"), Plaintiff in the above-styled action, and files this Complaint for Declaratory Judgment, showing this honorable Court as follows:

1.

This is an action for declaratory judgment, brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 USC § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist among Plaintiff Auto-Owners; Defendant Kramer Corporation of GA. ("Kramer");

Defendant Bay Valley Foods, LLC ("Bay Valley"); and Defendant FFI Group, LLC ("FFI").

2.

Auto-Owners is a corporation organized and existing under the laws of the state of Michigan, with its principal place of business in Michigan.

3.

Defendant Kramer is a Georgia corporation with its principal place of business in Thomasville, Thomas County, Georgia, which is authorized to conduct business in the state of Georgia. It may be served through its registered agent Michelle Williams, who is located at 108 A Business Circle, Thomasville, Georgia 31792-7026.  Defendant Kramer is a citizen of the State of Georgia.

4.

Defendant Bay Valley is a Delaware corporation with its principal place of business in Illinois, which is authorized to conduct business in the state of Georgia. It may be served through its registered agent for Georgia CT Corporation System, at 289 South Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805. Bay Valley is a wholly-owned subsidiary of its parent corporation, TreeHouse Foods, Inc. (TreeHouse), which is the sole member of Bay Valley. TreeHouse is a corporation organized under the laws of Delaware, and its principal place of business

is in Oak Brook, Illinois. Thus, for purposes of 28 U.S.C. § 1332, Bay Valley is a citizen of Delaware and Illinois given its sole member, TreeHouse, is a citizen of Delaware and Illinois.   None of the members of Defendant Bay Valley are citizens of the State of Michigan or Georgia.

5.

FFI is a limited liability company organized under the laws of the State of New Jersey. FFI is primarily engaged in the wholesale distribution of ingredients for food manufacturing. FFI maintains its principal business offices in Baltimore, Maryland. FFI has two members: (i) Bonnie G. Davis, a citizen of Maryland, and (ii) Joseph N. Davis, a citizen of Maryland. Thus, for purposes of 28 U.S.C. 1332, FFI is a citizen of Maryland given its members are citizens of Maryland.  FFI may be served through its registered agent. None of the members of FFI are citizens of the State of Michigan or Georgia.

6.

Venue in this action is proper pursuant to 28 USC § 1391.

7.

This Court has original jurisdiction over this action under the provisions of 28 USC § 1332, because it is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is among citizens

of different states.   Plaintiff asserts that the issue in controversy related to Plaintiff's duty to indemnify will exceed $75,000, as Bay Valley has alleged in its Amended Complaint that it has incurred damages in excess of $2 million. [Amended Complaint, Ex. A ¶4, 8].   Plaintiff asserts that the issue in controversy related to Plaintiff's duty to defend will exceed $75,000.   Thus, this Court has subject matter jurisdiction.

## Background Facts

### a.   Underlying Complaint

8.

On October 4, 2023, Bay Valley filed its initial Complaint against Defendants Kramer and FFI.   On  January 12, 2024, Defendant Bay Valley filed its Amended Complaint against named insured Kramer Corporation of GA and FFI Group, LLC in the United States District Court for the Northern District of Illinois. A true and correct copy of Defendant Bay Valley's Amended Complaint is attached hereto as Exhibit "A".

9.

The Amended Complaint included allegations that FFI and Kramer supplied Bay Valley with chopped onions that were contaminated with pieces of metal wire and endangered the health and safety of consumers.  Ex A. ¶ 1.

10.

The Amended Complaint alleges that FFI acknowledged responsibility for the contamination. Id., ¶ 2.

11.

According to the Amended Complaint, "over the course of its investigation, FFI (i) admitted to sourcing the onions from an overseas facility with a metal detection system that was 'not adequate,' (ii) traced the contamination to the overseas facility's production line, (iii) explicitly confirmed that the overseas facility was 'the factory that was the source of most of the [onions] found with foreign material,' and (iv) informed Bay Valley that it had stopped sourcing onions from the overseas facility months earlier." Id.

12.

The Amended Complaint alleges that FFI and Kramer did not inspect the onions before delivering them to Bay Valley. Id.

13.

The Amended Complaint alleges that Kramer and FFI refused to compensate Bay Valley for the costs it directly incurred in testing and recalling the onion product, as well as the salsa production into which onion product was incorporated. Id., ¶ 3.

14.

Bay Valley alleges that its damages of approximately $2 million include:

> a) the cost of x-raying the salsa containing FFI and Kramer's onions to ensure that salsa contaminated with metal was not released for consumption; (b) the value of the defective salsa that Bay Valley could not sell despite having incurred significant manufacturing costs; (c) the expense of storing and destroying the defective salsa that Bay Valley was unable to sell; (d) the cost of the unused onions that Bay Valley was forced to return to Kramer because of contamination issues; (e) the value of Bay Valley employee time diverted from regular responsibilities to protect consumer health and safety; (f) lost profits, including Bay Valley's inability to produce salsa at its manufacturing facilities due to contamination issues; and (g) attorney fees and legal costs incurred initiating this lawsuit after FFI and Kramer failed to compensate Bay Valley for its losses.

Id., ¶¶ 4, see also ¶49.

15.

The Amended Complaint alleges that Kramer and FFI agreed to comply with and executed certain supplier qualification documents including a Quality Expectations Manual, a Letter of Guarantee, and a Continuing Product Guarantee. Ex A, ¶¶ 19, 20, 22, 23, 25, 29.

16.

The Amended Complaint alleged that FFI executed Letters of Guarantee on January 15, 2013 and July 1, 2019 which provided that the products provided by FFI

would meet or exceed USDA and FDA guidelines regarding purity and conform to all other regulatory requirements.  (Ex. A, ¶21, 24)

17.

The Amended Complaint alleges when FFI and Kramer executed the documents, Kramer and FFI provided the documents to Bay Valley with the intent and knowledge that Bay Valley would not be able to purchase chopped onion product from Kramer and FFI without execution of the documents.  Id., ¶ 25.

18.

The Amended Complaint also alleges that FFI submitted ingredient questionnaire forms to Bay Valley which represented that FFI had safety measures in place which would detect foreign objects in the food product, such as metal. Id., ¶¶ 26-28.

19.

The Amended Complaint alleges that as early as November 2021, Kramer and FFI won a bid to supply chopped onions to Bay Valley, and that Kramer and FFI reached an agreement that Kramer would source the dehydrated onion product to fill the bid from FFI. Id., ¶ 30.

20.

The Amended Complaint alleges that both FFI and Kramer were aware that the onion product sourced by FFI was intended for use in Bay Valley's food products and was subject to prior agreements to comply with Bay Valley's SQE Manual and the product guarantees.  Ex. A, ¶¶31, 33.

21.

The Amended Complaint alleges that Bay Valley ordered chopped onions by submitting individual purchase orders to Kramer. Id., ¶ 32.

22.

The Amended Complaint alleges that the purchase orders contained warranties as to the quality, fitness, and merchantability of the onion product. Id., ¶ 34.

23.

The Amended Complaint alleges that the purchase orders contained an indemnification agreement in favor of Bay Valley. Id., ¶ 35.

24.

The Amended Complaint also alleges that the FFI and Kramer's chopped onion product was also subject to the implied warranties of merchantabilities contained in the Uniform Commercial Code.  Id. ¶36.

25.

The Amended Complaint alleges that Kramer and FFI provided Bay Valley with Certificates of Analysis which warranted that the product was free from foreign objects.  Id., ¶ 37.

26.

The Amended Complaint alleges that on June 1, 2022, Bay Valley received a customer complaint regarding a 24-ounce jar of salsa, which Bay Valley manufactured for a prominent supermarket chain's private-label brand. Id., ¶ 39.

27.

The customer reported that "a thin piece of metal wire was found when spooning the salsa from the jar to a plate" that "was about 3 inches in length."  Id.

28.

Two days later, on June 3, 2022, Bay Valley Foods received a second complaint regarding a 24-ounce jar of salsa, which Bay Valley manufactured for a large retailer's private-label brand.  Id.

29.

Like the first report, the customer reported finding "what appeared to be a wire or staple in her salsa" that "was about 2 inches long." Id.

30.

The Amended Complaint alleges that no physical injury was sustained by any customer who purchased the salsa product containing the defective onions.

31.

The Amended Complaint alleges that following an investigation, Bay Valley determined that onion products from Kramer and FFI were the sole common ingredient in the contaminated salsa, and implemented a "hold" on all chopped onions received from FFI and Kramer and all unshipped salsa that contained those onions.  Id., ¶¶ 40-41.

32.

The Amended Complaint alleges that FFI conducted its own independent investigation into the issue, and identified that its supplier, 5-Star Dehydration's foreign object monitoring system was inadequate and that the metal pieces originated from the dryer belt at 5-Star Dehydration's factory.  Ex A, ¶¶ 42-44.

33.

The Amended Complaint alleges that Bay Valley retained a third-party food safety consultant specializing in x-ray detection to examine all of Bay Valley's unshipped salsa containing FFI and Kramer's chopped onions. Id., ¶45.

34.

The Amended Complaint alleges that over the course of a multi-month process, Bay Valley's consultant confirmed that a material amount of the salsa that Bay Valley had manufactured with FFI and Kramer's onions contained metal wire matching descriptions from customer complaints and Bay Valley's inspection of its leftover inventory of FFI and Kramer's chopped onions. Id.

35.

The Amended Complaint alleges that Bay Valley destroyed the contaminated salsa and Bay Valley returned approximately 150,000 pounds of chopped onions to Kramer. The Amended Complaint alleges that Bay Valley incurred tens of thousands of dollars in storage fees from storing the contaminated salsa. Id., ¶ 46-47.

36.

The Amended Complaint alleges a claim for Breach of Express Warranty in violation of UCC 2-313 because Kramer expressly warranted in the purchase and sale agreement that the onion product would be of good quality, free from defects, and fit for its particular purpose. Ex A, ¶ ¶ 50-56.

37.

Bay Valley also asserts a claim against Kramer for Breach of Implied Warranty of Merchantability in violation of UCC 2- 314 because the onion product was not suitable for use in Bay Valley's salsa.  Id., ¶¶ 63-68.

38.

Next, Bay Valley asserts a claim for Breach of Implied Warranty of Fitness for a Particular Purpose in violation of UCC 2-315 because Kramer had reason to know that the chopped onions it supplied to Bay Valley and its subsidiaries would be used in Bay Valley's products, which were intended for sale and human consumption. The Amended Complaint alleges that Kramer also had reason to know that Bay Valley was relying on Kramer's skill and judgment to supply chopped onions that would be suitable for use in Bay Valley's products, which were intended for sale and human consumption.  Id., ¶¶76-83.

39.

Bay Valley asserts a claim for Breach of Contract against Kramer because by performing under the Purchase Orders, Kramer agreed that the product would fit the buyer's specifications, be of good quality, and be free from defects.  Ex A, ¶¶92-97.

40.

Bay Valley asserts a count for express indemnification from Kramer on grounds that the purchase orders required Kramer to indemnify Bay Valley for all damages Bay Valley seeks in the Complaint (including attorney fees), all of which arose from the contaminated onions that Kramer supplied to Bay Valley. Id., ¶¶ 98-103.

**b.** **The Policies**

**1.** **CGL Policy**

41.

On November 17, 2021, Auto-Owners issued renewal CGL policy number 214618-80171959-22, effective January 1, 2022, to Kramer Corporation of GA with a policy period from January 1, 2022 through January 1, 2023. A true and correct copy of the CGL policy is attached hereto as Exhibit B.

42.

The CGL policy provides commercial general liability coverage, subject to the terms, conditions, and exclusions contained in the policy.

43.

The "Each Occurrence" Limit is $1 million, the Personal and Advertising Injury Limit is $1 million, and the General Aggregate Limit is $2 million.

44.

The CGL policy contains an Amendment of General Aggregate Limit endorsement, which doubles the General Aggregate Limit to a total of $4 million.

45.

Unless excluded, the CGL policy provides one additional Products Completed Operations Aggregate Limit for each annual period, equal to the amount of the Products-Completed Operations Aggregate Limit shown in the Declarations.

46.

The maximum Product-Completed Operations Aggregate Limit for any annual period will be no more than two times the original Products-Completed Operations Aggregate Limit. The Products-Completed Operations Aggregate Limit is $2,000,000.

47.

The CGL policy's Commercial General Liability Coverage Form provides as follows:

> **COMMERICAL GENERAL LIABLITY COVERAGE FORM**
> . . .
> Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy.
> . . .
> The word "insured" means any person or organization qualifying as such under Section II- Who Is An Insured. Other words and phrases

that appear in quotation marks have special meaning. Refer to Section V- Definitions.
. . .

Ex B, Form CG 00 01 04 13, p.1.

48.

The CGL policy provides coverage under Coverage A as follows:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**
**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"  or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
. . .
**b**. This insurance only applies to "bodily injury" and "property damage" only if:
**(1)** the "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory" . . .

Id.

49.

The CGL policy defines "bodily injury" to mean "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." Ex B.,  Form CG 00 01 04 13, p. 11.

50.

The CGL policy defines "property damage" to mean:

>    a. Physical injury to tangible property, including all
>    resulting loss of use of that property. All such loss of
>    use shall be deemed to occur at the time of the physical
>    injury that caused it; or b. Loss of use of tangible
>    property that is not physically injured. All such loss of
>    use shall be deemed to occur at the time of the
>    "occurrence" that caused it. For purposes of this
>    insurance, electronic data is not tangible property….

Id., pp. 13-14.

51.

The CGL policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id., p. 13.

52.

The CGL policy defines "coverage territory" as:

>    a. The United States of America (including its territories
>    and possessions), Puerto Rico and Canada; b.
>    "International waters and airspace, but only if the injury or
>    damage occurs in the course of travel or transportation
>    between any places included in Paragraph a, above; or c.
>    All other parts of the world if the injury or damage arises
>    out of: (1) Goods or products made or sold by you in the
>    territory described in Paragraph a. above; (2) The activities
>    of a person whose home is in the territory described above
>    in Paragraph a. above but is away for a short time on your
>    business; or (3) "Personal and advertising injury" offenses
>    that take place through the internet or similar electronic

means of communication; provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a., above or in a settlement we agree to.

Id., pp. 11-12.

53.

Next, the CGL policy contains various Coverage A exclusions.  For example,

the policy contains a "contractual liability exclusion" which provides as follows:

**2.      Exclusions**
This insurance does not apply to:
. . .
**b. Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
**(1)**   That the insured would have in the absence of the contract or agreement; or
**(2)**   Assumed in a contract or agreement that is an "insured contract" , provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damaged because of "bodily injury" or "property damage", provided:
**(a)**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
**(b)**   Such attorneys' fees and litigation expenses are for defense of that party against a civil

> or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Id., p. 2.

54.

The CGL policy defines "insured contract" to include: "[t]hat part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. . ." Id., p. 12.

55.

Coverage A also contains exclusions for damage to "your work" and "your product" which provide that the CGL policy does not apply to:

> **K. Damage To Your Product**
> "Property damage" to "your product" arising out of it or any part of it.
> **L. Damage To Your Work**
> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Ex B, Form CG 00 01 04 13, p. 4.

56.

The policy defines "your work" as "[w]ork or operations performed by you or on  your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations", and includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'" and "[t]he providing of or failure to provide warnings or instructions."  <u>Id.</u>, p. 14.

57.

The CGL policy defines "your product" as follows:

   a.  Means:
       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
          (a) You;
          (b) Others trading under your name; or
          (c) A person or organization whose business or assets you have acquired; and
       (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:
       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
       (2) The providing of or failure to provide warnings or instructions.

Ex B, Form CG 00 01 04 13, p. 14.

58.

The CGL policy contains additional "business risk" exclusions including

impaired property and recall exclusions, which bar coverage for:

### m.  Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work'; or

(3)     "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Id., p. 5.

59.

The CGL policy defines "impaired property" as follows:

> "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> > a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
> > b. You have failed to fulfill the terms of a contract or agreement;
> > if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Id., p. 12.

60.

The CGL policy also provides coverage under Coverage B for "personal and advertising injury", as follows:

> **1.    Insuring Agreement**
> > **a**.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

> **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
> **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>
> **b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Ex B, Form CG 00 01 04 13, p. 5.

61.

The CGL policy's Commercial General Liability Plus Coverage endorsement

defines "personal and advertising injury" as follows:

> 14.   "Personal and advertising injury" means injury including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a.    False arrest, detention or imprisonment;
>
> b.    Malicious prosecution;
>
> c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person

occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services:

e. Oral or written publication of material, in any manner, that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement";

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

h. Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

Ex B,  Form 55352 (5-17), p. 1.

62.

In addition, the CGL policy excludes coverage for "personal and advertising injury" as follows:

**e.   Contractual Liability**
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f.    Breach Of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.   Quality Or Performance Of Goods- Failure To Conform To Statements**
"Personal and advertising injury" arising out of the failure of goods, products or services to conform with

> any statement of quality or performance made in your
> "advertisement".

Ex B,  Form CG 00 01 04 13, p. 6.

63.

Furthermore, the CGL policy contains specific requirements as to who may

or may not be considered an insured under the CGL policy.  The CGL policy

provides:

**SECTION II – WHO IS AN INSURED**
1.       If you are designated in the Declarations as:
. . .
> **d**.       An organization other than a partnership, joint
> venture or limited liability company, you are an
> insured. Your "executive officers" and directors
> are insureds, but only with respect to their duties
> as your officers or directors. Your stockholders
> are also insureds, but only with respect to their
> liability as stockholders.

. . .
3.       Any organization you newly acquire or form, other than
a partnership, joint venture or limited liability company,
and over which you maintain ownership or majority
interest, will qualify as a Named Insured if there is no
other similar insurance available to that organization.
However:
> **a**. Coverage under this provision is afforded only
> until the 90th day after you acquire or form the
> organization or the end of the policy period,
> whichever is earlier;
> **b**. Coverage A does not apply to "bodily injury"
> or "property damage" that occurred before you
> acquired or formed the organization; and
> **c.** Coverage B does not apply to "personal and
> advertising injury" arising out of an offense

committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Id., p. 9.

64.

The CGL policy contains an endorsement which modifies the definition of an

"insured" as follows:

**COMMERCIAL GENERAL LIABLITY COVEAGE PLUS COVERAGE**
This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABLITY COVERAGE PART**
. . .
9. **NEWLY FORMED OR ACQUIRED ORGANIZATIONS**
**SECTION II - WHO IS AN INSURED** is amended.
Paragraph 3. is deleted and replaced by the following paragraph.
3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.
However:
**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

25

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Ex B, Form 555 32 (5-17), p. 3.

65.

The CGL policy contains an **ADDITIONAL INSURED—DESIGNATED PERSON OR ORGANIZATION** endorsement, which identifies Flint Williams as an additional named insured or organization under the policy. This endorsement provides:

**A. Section II- Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However,

**1** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2**.    If coverage provided to the additional insured is required by a contract or agreement, then the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.**  With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    **1.**    Required by the contract or agreement; or

    **2.**    Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits Insurance shown in the Declarations.

Ex B, Form CG 20 26 04 13, p. 1.

66.

The CGL policy also contains the following Commercial General Liability Conditions, which apply to Coverages A and B:

**2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)**    How, when and where the "occurrence" or offense took place;

27

    **(2)**    The names and addresses of any injured persons and witnesses; and

    **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If any claim is made or "suit" is brought against any insured, you must:

    **(1)**    Immediately record the specifics of any claim or "suit" and the date received; and

    **(2)**    Notify us as soon as practicable.

You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Ex B, Form CG 00 01 04 13, p. 10.

67.

In addition, the requirement at 2a is amended as follows:

**a.**     Paragraphs a. and b. of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:

**(1)**     If the notice of a new claim is given to your "employee"; and;

**(2)**     That "employee" fails to provide us with notice as soon as practicable.

**b.**     This exception shall not apply:

**(1)** To you; or

**(2)** To any officer, director, partner, risk manager or insurance manager of yours.

Form 55 352 p. 1-2.

## **The Excess/Umbrella Policy**

68.

On November 1, 2021, Auto-Owners issued renewal umbrella policy number 53-171-969-00 to Kramer Corporation of GA with a policy period from January 1, 2022 to January 1, 2023. The umbrella policy provides liability coverage, subject to the terms, conditions, and exclusions contained in the policy. A true and correct copy of the umbrella policy is attached hereto as Exhibit C.

69.

The "Each Incident" Limit is $1 million, and the Retained Limit is $10,000.

70.

The Umbrella policy also contains a "Waiver Of Retained Limit"

endorsement, which provides:

It is agreed:

> Under **DEFINITIONS**, **Q. Retained limit is** deleted and replaced
> **by** the following:
> **Q. Retained limit** means the amount shown in the Declarations as
> **retained limit.** This is the amount **you** are responsible for as part
> of any settlement or judgment resulting from any one **incident** not
> covered by **underlying insurance**, but covered by this insurance.
> The **retained limit** does not apply to an **incident** when the
> Commercial General Liability, Businessowners or Garage
> Liability policy listed in the Schedule of Underlying Insurance was
> issued by an Auto-Owners Insurance Group company, and if **you**
> own one or more **automobiles**, the Automobile Liability policy
> listed in the Schedule of Underlying Insurance was issued by an
> Auto-Owners Insurance Group company and all such insurance
> was in effect at the time of the **incident**.

> All other policy terms and conditions apply.

Ex C, Form 26366 (7-05).

71.

The Commercial Umbrella Coverage Form provides coverage as follows:

> **COVERAGE**

> **A.**   **We** will pay those sums included in
> **ultimate net loss** that the **insured**
> becomes legally obligated to pay as
> damages because of:

     **1.**       **Bodily injury[1];**
     **2.**       **Property damage[2];**
     **3.**       **Personal injury; or**
     **4.**       **Advertising injury**
to which this insurance applies caused by an **incident**.

Ex C, Form 26800 (7-05), pp. 6-7.

72.

The umbrella policy defines "personal injury" to mean:

> injury, other than **bodily injury**, arising out of one or more of the following offenses:

> 1.     False arrest, detention or imprisonment;
> 2.     Malicious prosecution;
> 3.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises, that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> 4.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> 5.     Oral or written publication of material, in any manner, that violates a person's right to privacy; or
> 6.     Discrimination or humiliation.

Id., p. 4.

73.

The umbrella policy defines "advertising injury" to mean:

> injury arising out of one or more of the following offenses:

---

[1] The umbrella policy's definition of "bodily injury" is virtually identical to the CGL policy's definition.
[2] The policies' definitions of "property damage" are also virtually identical.

> **1.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in **your advertisement**;
>
> **2.**  Oral or written publication, in any manner, of material that violates a person's right of privacy in **your advertisement**;
>
> **3**.  The use of another's advertising idea in **your advertisement**; or
>
> **4**.  Infringing upon another's copyright, **trade dress** or slogan in **your advertisement**.

Id., p. 2.

74.

The umbrella policy defines "incident" to mean:

> either an occurrence or an offense, whichever is the basis of coverage, then:
>
> **1.**  When coverage applies on an occurrence basis, **incident** means an accident with respect to:
>> **a. Bodily injury**, including damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**; or
>> **b. Property damage** including continuous or repeated exposure to substantially the same general harmful conditions. Continuous or repeated exposure to substantially the same general harmful conditions constitutes one **incident**.
>
> **2.**  When coverage applies on an offense basis, **incident** means an offense committed by the **insured** resulting in **personal injury** or **advertising injury**, including all such injury sustained by any one person or organization.

Id., p. 3.

75.

The umbrella policy states:

**B**.    If the basis of coverage for an **incident** is:

     **1.** An occurrence:

     **a.** The **bodily injury** and **property damage** must take place during the policy term; and

     **b.** The **incident** must take place in the **policy territory**; and

     **c.** This insurance applies to bodily injury and **property damage** only if:

     **(1)** Before the beginning of the policy term shown in the Declarations, none of the following persons knew that the **bodily injury** or **property damage** had occurred in whole or in part:

…

     **(d)** If **you** are designated in the Declarations as an organization other than a partnership, joint venture or limited liability company, **your executive officers** and directors.

     **(e) Your** employee authorized by **you** to give or receive notice of an **incident**.

If any of the above persons knew prior to the policy term that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy term will be deemed to have been known before the beginning of the policy term shown in the Declarations.

     **(2)** **Bodily injury** and **property damage** will be deemed to have been known to have occurred at the earliest time when any person shown in **c.(1)(a)** through **c.(1)(e)** immediately above:

     **(a)** Reports all, or any part, of the **bodily injury** or **property damage** to **us** or any other insurer;

     **(b)** Receives a written or verbal demand or claim for damages because of the **bodily injury** or **property damage**; or

> **(c)** Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to occur.
>
> **2**.  An offense:
>
> **a.**  The **personal injury** and **advertising injury** must be committed during the policy term; and
>
> **b.**  The **incident** must take place in the **policy territory**.

Ex C, Form 26800 (7-05), p. 7.

76.

The Umbrella Policy defines "insured" as "the person(s) or organization(s) qualifying as such under the **PERSONS AND ORGANIZATIONS INSURED** section of this Policy." Ex. C, Form 26800 (7-05), p. 3.

77.

The umbrella policy also contains various exclusions. For example, it precludes coverage for:

> **B.**  Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> **1.  Your product;**
>
> **2.  Your work;** or
>
> **3.  Impaired property**
>
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Id., p. 8.

78.

The Umbrella policy defines "your product" as

> 1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by
>     a. **You**;
>     b. Others trading under **your** name; or
>     c. A person whose business or assets **you** have acquired.
>     . . .
>     **Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of any of the items included in **1.** or **2.** immediately above.

<u>Id.</u>, p. 6.

79.

The Umbrella policy defines "**your work**" as follows:

**Your work** means:
**1.** Work or operations performed by **you** or on **your** behalf; and
**2.** Materials, parts or equipment furnished in connection with such work or operations.
**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of any of the items included in **1.** or **2.** immediately above.

<u>Id</u>.

80.

The umbrella policy defines "Impaired Property" to mean:

> Tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:
>> 1. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or
>> 2. **You** have failed to fulfill the terms of a contract or agreement
>
> if such property can be restored to use by:
>> 1. The repair, replacement, adjustment, or removal of **your product** or **your work**; or
>> 2. **Your** fulfilling the terms of the contract or agreement.

Id., p. 2.

81.

The Umbrella policy defines "insured contract" to include "that part of any other contract or agreement pertaining to **your** business (including indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the **tort liability** of another to pay damages because of **bodily injury** or **property damage** to a third person or organization" Id., p. 3.

82.

The umbrella policy excludes coverage for:

> **D.**    Any wrongful act, error or omission or breach of duty by any **insured** in the performance of the office of director or officer of an organization.

36

. . . .

**M.**    **Bodily injury** or **property damage** expected or intended from the standpoint of the **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

. . .

**Q.**    **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **1.**    Assumed in a contract or agreement that is an **insured contract**, provided such **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the **insured**, it also does not apply to such liability assumed by the **insured** under an **insured contract**; or

    **2.**    That the **insured** would have in the absence of the contract or agreement.

. . .

**W.**    **Personal injury** or **advertising injury** arising out of any **incident** first committed before the beginning of the policy term.

. . .

**Z.**    **Property Damage** to **your product** arising out of it or any part of it.

**A.A.**    **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard.**

Id., pp. 8, 12, 13, 14.

83.

By endorsement, the umbrella policy defines "products-completed operations

hazard" as follows:

> Under **DEFINITIONS, O. Products-completed operations hazard** is deleted and replaced by the following definition.
>
> **O. Products-completed operations hazard** includes all **bodily injury and property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:
>
> > **1.** Products that are still in your physical possession: or
> > **2.** Work that has not yet been completed or abandoned. However, **your work** will be deemed completed at the earliest of the following times:
> >
> > > **a.**   When all of the work called for in **your** contract has been completed.
> > > **b.**   When all of the work to be done at the job site has been completed if **your** contract calls for work at more than one job site.
> > > **c.**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
> > >
> > > Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
>
> The **products-completed operations hazard** does not include **bodily injury** or **property damage** arising out of:
>
> > **1.** The transportation of property, unless the injury or damage  arises out of a condition in or on a vehicle not owned or operated by **you**, and that condition was created by the "loading or unloading" of that vehicle by any **insured**; or

    **2.** The existence of tools, uninstalled equipment or abandoned or unused materials.

Except when otherwise excluded by this policy, this definition does not apply if any **scheduled underlying insurance** shown in the Declarations under the Schedule of Underlying Insurance provides such coverage and is maintained:

    **1.** At the agreed liability limits shown in the Schedule of Underlying Insurance; and

    **2.** In accordance with the **Maintenance Underlying Insurance condition.**

All other policy terms and conditions apply.

    Ex C, Form 66088 (9-14).

84.

The umbrella policy's property damage to your work exclusion is superseded as follows:

    It is agreed:

    **EXCLUSIONS** is amended. Exclusion **AA** is deleted and replaced by the following:

    **AA**.  **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor; and only if any **scheduled underlying insurance** shown in the Declarations under the Schedule of Underlying Insurance provides such coverage and is maintained:

    **1.**    At the agreed liability limits shown in the Schedule of Underlying Insurance; and

    **2.**    In accordance with the **Maintenance of Underlying Insurance** condition.

39

All other policy terms and conditions apply.

Ex C, Form 66174 (12-17).

85.

The umbrella policy also excludes coverage for:

**BB. Property Damage to impaired property** or property that has not been physically injured, arising out of:

    **1.**    A defect, deficiency, inadequacy, or dangerous condition in **your product or your work;**

    **2.**    A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

        This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

**CC. Advertising injury** arising out of:
. . .

    **1.**    A breach of contract, except an implied contract to use another's advertising idea in **your advertisement**;

    **2.**    The failure of goods, products or services to conform with any statement or representation of quality or performance made in **your advertisement;** or

    **3.**    The wrong description of the price of goods, products, or services.

**DD**. **1.**  Punitive or exemplary damages, except to the extent that coverage is provided in any **scheduled underlying insurance** shown in the Declarations under the Schedule of Underlying Insurance provided such coverage is maintained:

> **a.** At the agreed liability limits shown in the Schedule of Underlying Insurance; and;
> **b.** In accordance with the **Maintenance of Underlying Insurance** condition.

Ex C, Form 26800 (7-05) p. 14-15.

86.

The umbrella policy also limits who would be considered an insured under the policy. It provides:

> **PERSONS AND ORGANIZATIONS INSURED**
> . . . .
> **E.**   If **you** are designated in the Declarations as an organization other than a partnership, joint venture or limited liability company:
> **1. You** are an **insured**; and
> **2.** Any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or majority interest, will qualify as an **insured** if there is no other similar insurance available to that organization. However:
>> **a**. Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy term, whichever is earlier; and
>> **b**. Coverage does not apply to **bodily injury, property damage, personal injury** or **advertising injury** that occurred before **you** acquired or formed the organization.
> **F**.   Any **executive officer** or director of **yours** while acting within the scope of his or her duties for **you**. **Your** stockholders are **insureds**, but only with respect to their liability as a stockholder.

Form 26800 (07-05), p. 16.

87.

The umbrella policy also contains the following endorsement:

**NEGLIGENT HIRING AND SUPERVISION – FOLLOWING FORM**

It is agreed:

**EXCLUSIONS** is amended. The following exclusion is added.

**Bodily injury**, **property damage, personal injury** or **advertising injury** for which any **insured** may be held liable because of the actual or alleged negligent:

1. Hiring;

2. Supervision;

3. Retention;

4. Employment;

5. Training;

6. Reporting to the proper authorities, or failure to so report; or

7. Investigation

of **your** employee, volunteer worker, officer or director.

Except when otherwise excluded by this policy, this exclusion does not apply if any **scheduled underlying insurance** shown in the Declarations under the Schedule of Underlying Insurance provides such coverage and is maintained:

**1.** At the agreed liability limits shown in the Schedule of Underlying Insurance; and

**2.** In accordance with the **Maintenance of Underlying Insurance** condition.

All other policy terms and conditions apply.

Ex C, Form 66175 (12-17).

88.

The umbrella policy also requires the insured to perform certain duties under

the policy. The umbrella policy provides:

> **H.**     **Notice of Incident, Claim or Suit**
>
> **1.**     When an **incident** likely to involve **us** takes place, the **insured** must notify **us** in writing as soon as practicable, of any **incident**, claim or **suit**. Notice of an **incident** is not notice of a claim.
>
> The notice must give:
>
>     **a.**  **Your** name and policy number;
>
>     **b.**  The time, place and circumstances of the **incident**; and
>
>     **c.**  The names and witnesses of injured persons and witnesses.
>
> The **insured** shall promptly take at his or her expense all reasonable steps to prevent other **bodily injury, property damage, personal injury**, or **advertising injury** from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.
>
> **2.**     If claim is made or **suit** is brought, **we** must be advised promptly. All papers in connection with claims or **suits** must be sent to **us** without delay.
>
> 3.     The **insured** must:
>
>     a.  immediately send **us** copies of any correspondence, demands, notices, summons or papers in connection with any claim or **suit**;
>
>     b.  Authorize **us** to obtain records or other information;
>
>     c.  Cooperate with **us** in the investigation or settlement of any claim or defense of any **suit**; and
>
>     d.  Assist **us,** upon **our** request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of

> injury or damage to which this insurance may also
> apply. . . .

Ex C, Form 268 00 (7-05), p. 19.

89.

Kramer had notice of claims that "foreign material" was found in the dried

onion product at issue by at least June 22, 2022.

90.

Kramer received a formal claim regarding the alleged "occurrence" on or

about September 20, 2022.

91.

Auto-Owners received notice of the alleged "occurrence" and claim on or

about September 28, 2022 from a third-party claimant.

92.

On or before October 11, 2023, Defendant Kramer was served with Defendant

Bay Valley's initial Complaint.

93.

On December 1, 2022; February 3, 2023; September 15, 2023; and October

19, 2023, Plaintiff Auto-Owners sent reservation of rights letters to Defendant

Kramer.

94.

Under a complete reservation of rights, Auto-Owners is currently providing Defendant Kramer with a defense to the underlying lawsuit. In providing that defense, Auto-Owners has reserved its rights either to withdraw its defense and/or disclaim coverage and indemnification for all or part of any judgment or settlement that may be obtained against Defendant Kramer in the underlying lawsuit.

## FIRST CLAIM FOR RELIEF

95.

Auto-Owners reiterates paragraphs 1 through 94 as if fully set forth herein.

96.

The contracts of insurance issued by Auto-Owners to Defendant Kramer do not provide coverage for the underlying lawsuit against Defendant Kramer and, therefore, Auto-Owners has no duty to defend or indemnify Defendant Kramer for the claims asserted in the underlying lawsuit.

97.

The CGL policy at issue requires the insured to give timely notice of a claim. More specifically, the CGL policy provides as follows:

**2.       Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If any claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of any claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the

insured because of injury or damage to which this insurance may also apply.

98.

Defendant Kramer received notice and had knowledge of the alleged "occurrence" and potential claim on or before June 22, 2022.

99.

Plaintiff Auto-Owners did not receive notice of the occurrence, potential claim, and/or claim against Defendant Kramer until on or about September 28, 2022.

100.

To the extent that Defendant Kramer failed to provide timely notice of the "occurrence", offense, potential claim, and/or claim pursuant to the terms and conditions of the CGL policy, no coverage is afforded under the policies for liability or damages that may be sought against Defendant Kramer in the Underlying Lawsuit.

101.

A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

102.

Accordingly, Auto-Owners seeks a declaration from this Court that no indemnification or duty to defend is owed to Defendant Kramer for any liability or damages that may be incurred by Defendant Kramer in the Underlying Lawsuit because it did not provide timely notice of the "occurrence", offense, potential claim, or claim under the terms and conditions of the policies.

## SECOND CLAIM FOR RELIEF

103.

Auto-Owners reiterates paragraphs 1 through 102 as if fully set forth herein.

104.

The insurance contracts issued by Auto-Owners do not provide coverage for the Underlying Lawsuit against Defendant Kramer, and, therefore, Auto-Owners has no duty to defend or indemnify said Defendant for the claims asserted against it in that lawsuit.

105.

Specifically, the CGL policy contains a recall exclusion, which excludes coverage for:

> **n. Recall Of Products, Work Or Impaired Property**
> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (1)    "Your product";
    (2)    "Your work'; or
    (3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

## 106.

To the extent the damages at issue in the Underlying Lawsuit are claimed because Defendant Kramer's "work" or "product" was withdrawn or recalled from the market, the recall exclusion contained in the CGL policy applies.

## 107.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

## 108.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to either Defendant Kramer for any liability that may come within the recall exclusion endorsement, as set forth in the policy.

## THIRD CLAIM FOR RELIEF

109.

Auto-Owners reiterates paragraphs 1 through 108 as if fully set forth herein.

110.

The insurance contract issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against Defendant Kramer, and, therefore, Auto-Owners has no duty to defend or indemnify said Defendant for the claims asserted against it in that lawsuit.

111.

Specifically, the CGL policy contains exclusions for Damage to Your Product and Damage to Your Work, which provide as follows:

> **K. Damage To Your Product**
> "Property damage" to "your product" arising out of it or any part of it.
> **L. Damage To Your Work**
> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Ex B, Form CG 00 01 04 13, p. 4.

112.

To the extent the damages at issue in the Underlying Lawsuit arise out of Defendant Kramer's "product" or its "work", no coverage may exist.

113.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

114.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant Kramer for any liability that may come within the "Your Product" or "Your Work" exclusions, as set forth in the policies.

**FOURTH CLAIM FOR RELIEF**

115.

Auto-Owners reiterates paragraphs 1 through 114 as if fully set forth herein.

116.

The insurance contract issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against Defendant Kramer, and, therefore, Auto-Owners has no duty to defend or indemnify said Defendant for the claims asserted against it in that lawsuit.

117.

Specifically, the CGL policy contains an exclusion for impaired property, which provides as follows:

> **m. Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

118.

To the extent the damages at issue in the Underlying Lawsuit consist of "property damage" to "impaired property", the impaired property exclusion contained in the policies applies.

119.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

120.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to either Defendant Kramer for any liability that may come within the impaired property exclusion, as set forth in the policy.

**FIFTH CLAIM FOR RELIEF**

121.

Auto-Owners reiterates paragraphs 1 through 120 as if fully set forth herein.

122.

The insurance contracts issued by Auto-Owners do not provide coverage for the Underlying Lawsuit against Defendant Kramer, and, therefore, Auto-Owners has no duty to defend or indemnify said Defendant for the claims asserted against it in that lawsuit.

123.

Specifically, the CGL policy contains an exclusion for "personal and advertising injury" arising out of failure to goods to conform, which provides as follows:

> **g.   Quality Or Performance Of Goods- Failure To Conform To Statements**
> "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

Ex B, Form CG 00 01 04 13, p. 6.

124.

To the extent the damages at issue in the Underlying Lawsuit arise out of the alleged failure of Defendant Kramer's goods to conform, the failure to conform exclusion contained in the policies applies.

125.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

126.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to either Defendant Kramer for any liability that may come within the failure to conform exclusions, as set forth in the policies.

## SIXTH CLAIM FOR RELIEF

127.

Auto-Owners reiterates paragraphs 1 through 126 as if fully set forth herein.

128.

The insurance contracts issued by Auto-Owners do not provide coverage for the Underlying Lawsuit against Defendant Kramer, and, therefore, Auto-Owners has no duty to defend or indemnify said Defendant for the claims asserted against it in that lawsuit.

129.

Specifically, the CGL policy contains an exclusion for "bodily injury" or "property damage" for which the insured has assumed contractual liability, which bars coverage for:

**a. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract" , provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damaged because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**    Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

130.

To the extent the damages at issue in the Underlying Lawsuit arise out of "bodily injury" or "property damage" for which the insured assumed liability in a contract or agreement, the contractual liability exclusion contained in the policies applies.

131.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

132.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to either Defendant Kramer for any liability that may come within the contractual liability exclusions, as set forth in the policies.

## SEVENTH CLAIM FOR RELIEF

133.

Auto-Owners reiterates paragraphs 1 through 132 as if fully set forth herein.

134.

The insurance contracts issued by Auto-Owners do not provide coverage for the Underlying Lawsuit against Defendant Kramer, and, therefore, Auto-Owners has no duty to defend or indemnify said Defendant for the claims asserted against it in that lawsuit.

135.

Specifically, the CGL policy contains exclusions for "personal and advertising injury" arising out of contractual liability or breach of contract, which bar coverage for:

**e.   Contractual Liability**
"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f.    Breach Of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

136.

To the extent the damages at issue in the Underlying Lawsuit arise out "personal and advertising injury" arising out of contractual liability or breach of contract, the above referenced exclusions contained in the policies apply.

137.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

138.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to either Defendant Kramer for any liability that may come within the contractual liability or breach of contract exclusions, as set forth in the policies.

**EIGHTH CLAIM FOR RELIEF**

139.

Auto-Owners reiterates paragraphs 1 through 138 as if fully set forth herein.

140.

To the extent that the insurance contracts issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Kramer, Auto-Owners has no duty to defend or indemnify Defendant Kramer for the claims asserted against it in that lawsuit.

141.

Specifically, under Coverage A the policies only provide coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence".

142.

To the extent the damages at issue in the underlying lawsuit were not because of "property damage" and/or were not the result of an "occurrence" no coverage may exist.

143.

No coverage is owed for any liability against Defendant Kramer for damages that were not because of "property damage", including, but not limited to, any punitive damages that may be sought against said Defendant.

144.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

145.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant Kramer for any liability for damages that are not because of "property damage", including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## NINTH CLAIM FOR RELIEF

146.

Auto-Owners reiterates paragraphs 1 through 145 as if fully set forth herein.

147.

No coverage is owed to Defendant Kramer under the policies for the damages asserted in the underlying lawsuit to the extent that the damages at issue were not "caused by an 'occurrence'" as defined under the policies.

148.

Therefore, to the extent that the alleged damages were not caused by an "occurrence" under the policies, no coverage is afforded under said policies for liability or damages that may be sought against Defendant Kramer in the underlying lawsuit.

149.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

150.

Accordingly, Auto-Owners seeks a declaration from this Court that no indemnification or duty to defend is owed to Defendant Kramer for any liability or damages that may be incurred by Defendant Kramer in the underlying lawsuit to the extent they were not caused by an "occurrence" under the policies in question.

**TENTH CLAIM FOR RELIEF**

151.

Auto-Owners reiterates paragraphs 1 through 150 as if fully set forth herein.

152.

To the extent that the insurance contracts issued by Auto-Owners do not provide coverage for the underlying lawsuit against Defendant Kramer, Auto-Owners has no duty to defend or indemnify Defendant Kramer for the claims asserted against it in that lawsuit.

153.

Specifically, under Coverage B, the CGL policy only provides coverage for damages because of "personal and advertising injury".

154.

To the extent the damages at issue in the underlying lawsuit were not because of "personal and advertising injury", no coverage may exist.

155.

No coverage is owed for any liability against the Defendant Kramer for damages that were not because of "personal and advertising injury", including, but not limited to, any punitive damages that may be sought against said Defendant.

156.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights

and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

157.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant Kramer for any liability for damages that are not because of "personal and advertising injury", including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## **ELEVENTH CLAIM FOR RELIEF**

158.

Auto-Owners reiterates paragraphs 1 through 157 as if fully set forth herein.

159.

The policies of insurance issued by Auto-Owners identify Kramer Corporation of Georgia as the named insured.

160.

The CGL policy defines an "insured" as follows:

### **C. WHO IS AN INSURED**

**1.**     If you are designated in the Declarations as:

**a.**     An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.**     A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.**     A limited liability company, you are insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.**     An organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

. . .

**2.**     Each of the following is also an insured:

**a.**     Your employees, other than either your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

. . .

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or

limited liability company that is not shown as a Named Insured in the Declarations.

161.

To the extent this Policy provision is triggered there may be no coverage under the Policy.

162.

A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

163.

**WHEREFORE,** Auto-Owners prays:

a.   That this Court enter a Declaratory Judgment declaring that Auto-Owners has no duty to defend or indemnify Defendant Kramer under the aforementioned contracts of insurance for any claims made against them in the underlying lawsuit;

b.   That Auto-Owners be awarded its costs in this action;

c.   That this Court award such other and further relief as this honorable Court may deem proper under the circumstances; and

d.     That process and summons be issued to all Defendants herein and that

service on the Defendants be had as required by law.

Respectfully submitted this 15th day of February, 2024.

                                      **SWIFT, CURRIE, McGHEE & HIERS**

                                    /s/ Jessica M. Phillips
                                    Georgia Bar No. 922902
                                    Melissa K. Kahren
                                    Georgia Bar No. 527406
                                    Christopher A. Wood
                                    Georgia Bar No. 272768
                                    *Attorneys for Auto-Owners Insurance Company*

1420 Peachtree Street, NE
Suite 800
Atlanta, Georgia 30309
Off: (404) 874-8800
jessica.phillips@swiftcurrie.com
melissa.kahren@swiftcurrie.com
christopher.wood@swiftcurrie.com

4889-3069-3524, v. 1